**SAN FRANCISCO ASS'N FOR THE BLIND v. INDUSTRIAL AID FOR THE BLIND, Inc.**

No. 13143.

Circuit Court of Appeals, Eighth Circuit.

Jan. 10, 1946.

Rehearing Denied Feb. 6, 1946.

Hugh N. Orr, of San Francisco, Cal. (Rodney Bedell, of St. Louis, Mo., and Charles S. Evans, of San Francisco, Cal., on the brief), for appellant.

Joseph J. Gravely, of St. Louis, Mo. (Emmet T. Carter, David Baer, Jr., Carter, Bull & Garstang, and Carr, Carr & Gravely, all of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment dismissing the complaint of the appellant. The complaint charged the appellee with infringement of the appellant's registered trade-mark "Blindcraft" and with unfair competition. The appellant will be referred to as "plaintiff", and the appellee as "defendant". The District Court determined that the term "Blindcraft" is descriptive

and not subject to appropriation as a trademark, and that defendant's products, which bear the mark "Blind-Kraft", were not shown to have come into competition with those of plaintiff. The plaintiff asserts that, under the evidence and the applicable law, it was entitled to judgment.

The plaintiff is a California corporation, formed in 1914. It has an office and factory in San Francisco. Its sole purpose is to assist the blind, mainly by furnishing them with gainful employment. It manufactures and sells brooms, brushes, mops, baskets, reed and rattan furniture, rugs and mats, and other similar products. All of these are made by blind workmen. It receives no public subsidies and sells its products upon their merits in competition with the makers of similar goods. Plaintiff's capacity to help the blind depends upon its ability profitably to market its products, which are sold in interstate and foreign commerce. The yearly volume of its business amounts to about $200,000.

In 1916 the plaintiff adopted "Blindcraft" as its trade-mark, and since that time has used the mark upon all of its products, stationery, and advertising matter. It has widely publicized its goods and trade-mark in the United States and in foreign countries. The plaintiff has procured four registrations of its trade-mark in the United States Patent Office under the Trade-Mark Act of February 20, 1905, 33 Stat. 724, 15 U.S.C.A. § 81 et seq.; the first on January 5, 1926, for brooms, brushes, dusters, and mops; the second on March 23, 1926, for baskets; the third on April 6, 1926, for reed and rattan furniture; and the fourth on February 12, 1929, for rugs and mats. The plaintiff, since it adopted its trademark, has claimed the exclusive right to use it, and has sought to prevent others from appropriating it. On three occasions the use of the trade-mark by similar organizations was discontinued by them after notice of plaintiff's rights and registrations. One of these organizations was located in Massachusetts, one in New York, and one in California. The plaintiff, in 1937, notified the defendant that its use of the mark "Blind-Kraft" was an infringement of the plaintiff's trade-mark. The defendant has continued to use the mark. Evidence was introduced by the plaintiff to show that from a date prior to 1926 its products have been sold and distributed throughout the United States, including the state of Missouri and its neighboring states.

The defendant is a Missouri corporation organized, apparently, in 1934. It serves the same useful purpose in St. Louis, Mo., that plaintiff serves in San Francisco, Cal. The minutes of the Missouri Commission for the Blind, a State agency, show that on January 5, 1935, it transferred to the defendant "all right, title, and interest in and to the * * * St. Louis Broom Shop for the Blind," including its assets and good will. This shop, prior to the time the defendant took it over, was evidently operated under the supervision of, and belonged to, the Commission. The defendant receives State aid. It manufactures in St. Louis, and sells in Missouri and in states bordering on Missouri, brooms, mops on a handle, mop heads, door mats and handkerchiefs. About 1935 it made baskets for a period of six months. It attempted, unsuccessfully, to manufacture brushes. Its products are made by blind workmen and it has used the mark "Blind-Kraft" upon its goods with the consent of the Missouri Commission for the Blind. The mark has been used since December 15, 1928, upon the products of the shops established in Missouri for the blind by the Commission. The mark "Blind-Kraft" was registered as a trademark by the Commission with the Secretary of State of Missouri on February 25, 1937, to be applied to "Brooms, Mops, Rugs, Bath Mats, Door Mats, Towels, Wash Cloths, Dish Cloths, Dust Cloths, Aprons, Shoe and Laundry Bags, Coat Hangers, Ironing Board Pads and Covers, Hot Plate Pads, Leather Belts and Purses, and Nursery Items, and other items that may be added from time to time."

The first question for consideration is whether the trade-mark "Blindcraft" is a valid trade-mark. The District Court was of the opinion that the term "Blindcraft" was descriptive of the handiwork of the blind and hence was available to anyone to describe the products of blind workmen. The court regarded "Blindcraft" as closely analogous to a geographical name.

The Trade-Mark Act of 1905, c. 592, § 5, 33 Stat. 725, 726, 15 U.S.C.A. § 85, provides: "* * * That no mark which consists * * * merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term, shall be registered * * *."

It is true that the trade-mark "Blindcraft" suggests that an article so marked

was made by blind workers. The term "Blindcraft", however, is not specifically descriptive of any of the goods produced by the plaintiff or by the defendant or of the character or quality of such goods. The label "Blindcraft" upon a broom does not describe the broom. With respect to it, the mark is a fanciful, nondescriptive term.

In the case of Henry Muhs Co. v. Farm Craft Foods, Inc., D.C.E.D.N.Y., 37 F.Supp. 1013, Judge Galston held that the term "Farmcraft" as applied to farm products was a valid trade-mark. He said (page 1015 of 37 F.Supp.) : "The validity of the term Farmcraft as a trade-mark is attacked as descriptive because both the words Farm and Craft are said to be general terms and available to the public. But the combination of two descriptive components into a single coined, arbitrary and fanciful word may be a perfectly valid, technical trade-mark. The term must be considered in its entirety. The word Farmcraft does not describe cheese nor any of the other products to which the plaintiff applies the term. At most it is a suggestive term. The distinction between words which are descriptive and those which are merely suggestive is noted in Le Blume Import Co., Inc., v. Coty et al., 2 Cir., 293 F. 344. 'Craft' is a word that has been employed in combination in frequent registrations in the United States Patent Office, in such instances as 'Seacraft' for fish, 'Pancraft' for flour and 'Musiccraft' for phonograph records." The District Court, in the instant case, thought that there was a distinction between the descriptiveness of "Farmcraft" and that of "Blindcraft". The difference between the two terms we regard as insubstantial. One is suggestive of products of the farm, and the other is suggestive of products of the blind.

The case of Wolf Bros. & Co. v. Hamilton-Brown Shoe Co., 165 F. 413, which arose in this Circuit, bears some analogy to this case. Two of the judges of this Court who heard the Wolf Bros. case thought that the trade-mark "The American Girl" as applied to women's shoes was geographical and descriptive. Judge Walter H. Sanborn, who dissented, thought that the trademark was neither geographical nor descriptive. He said (page 418 of 165 F.) : " 'The American Girl,' when applied to a shoe, is, in my opinion, an arbitrary and fanciful name, and hence constitutes a valid trademark, when it comes to designate the origin or manufacture of the shoe. It was not a geographical description of the shoe, because it does not state or indicate that it was made, or sold, or used, in America. It was not, when first applied by the complainant to the shoe, and before he had taught the trade its meaning, descriptive of the shoe, or of its materials or characteristics (and that is the true test—Wellcome v. Thompson & Capper, 1 L.R.Ch.Div.1904, 736, 742, 749, 750, 754; Keasbey v. [Brooklyn] Chemical Works, 142 N.Y. 467, 471, 474, 475, 476, 37 N.E. 476, 40 Am.St.Rep. 623), because it described nothing but a girl, and the term 'American Girl' was just as descriptive of a coat, or a hat, or a glove, or a car, or an engine, or any other manufactured article, as it was of a shoe; that is to say, it was not descriptive of a shoe in any way whatever. It was nothing but an arbitrary, fanciful term, which the complainant, by means of its advertisements and its use, caused to indicate to the trade that the shoe to which it was applied originated in the complainant's shops and was made by it."

The Supreme Court, in reversing this Court, in Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, at pages 256, 257, 36 S.Ct. 269, at page 271, 60 L.Ed. 629, said: " * * * We do not regard the words 'The American Girl,' adopted and employed by complainant in connection with shoes of its manufacture, as being a geographical or descriptive term. It does not signify that the shoes are manufactured in America, or intended to be sold or used in America, nor does it indicate the quality or characteristics of the shoes. Indeed, it does not, in its primary signification, indicate shoes at all. It is a fanciful designation, arbitrarily selected by complainant's predecessors to designate shoes of their manufacture. We are convinced that it was subject to appropriation for that purpose, and it abundantly appears to have been appropriated and used by complainant and those under whom it claims."

The term "Blindcraft", to our minds, does not indicate brooms or brushes or mops or furniture or any species or class of goods upon which the plaintiff uses its mark. It is obvious that when the defendant (in 1928) adopted and (in 1937) registered the term "Blind-Kraft", it considered the mark one which properly could be appropriated and used. We have no doubt that the plaintiff was free to appropriate, register, and use "Blindcraft" as its trade-mark.

The second question for consideration is whether the plaintiff's evidence established that, prior to the time "Blind-Kraft" was used as a trade-mark by the Missouri Commission for the Blind on the products made in the shops under its supervision, the plaintiff had entered the defendant's trade territory with products of the same class. The District Court found that the plaintiff had not entered the same trade territory with goods of the same class. It is necessary to determine: (1) When the Missouri Commission first used the mark "Blind-Kraft" or a substantially similar mark upon the products of the shops which it supervised; (2) whether the evidence shows competition by plaintiff in the same territory with goods of the same general class as those made and sold by the defendant.

Apparently the mark "Blind-Kraft", as used upon the products of the shops under the jurisdiction of the Missouri Commission for the Blind, devolved from an earlier use of the words "Blind Crafts" by the Northwest Missouri Association for the Blind, which had a shop at St. Joseph, Mo. George Pollard, who organized the shop in 1923, testified that he considered that the name of the Association was too long for billheads, labels, etc., and that he invented the name "Blindcraft"; that he regarded that name as appropriate because the shop was making brooms, brushes, carpets and rugs and the word "crafts" would cover them all; that a sign "Metalcrafts" on a nearby factory aided him in choosing the name; that he placed the name "Blindcraft" on the shop in 1924, and that that continued to be its name until it was changed to "Blind-Krafts" in 1925 or 1926; that he had not heard of the name "Blindcraft" when he adopted it; that he used it to identify goods made in the shop at St. Joseph. The evidence indicates that it is improbable that the name "Blindcraft" was used by Pollard. There are three letters of Mr. Pollard in the record, which were introduced by the defendant. Two of the letters, written in 1926, and one, written in 1928, were upon letterheads of the Northwest Missouri Association for the Blind. The letterheads show the words "Blind Crafts" under the name of the Association and over the street address. A directory of the American Foundation for the Blind for 1926 shows the location of the Association to be "Blind Crafts, 307-309 South Fourth Street, St. Joseph, Missouri." Whether the words "Blind Crafts" were actually used upon the goods produced by the shop at St. Joseph or by any of the other shops supervised by the Missouri Commission for the Blind, is not clear from the record. No labels bearing the name were introduced, and there is no positive statement by Mr. Pollard that the labels which were applied to the goods produced at the St. Joseph shop bore those words. It is possible that an inference to that effect would be justified. On the other hand, the evidence of the defendant is not inconsistent with the theory that the name "Blind Crafts" or "Blind Craft" came to be used prior to 1928 upon the shops under the jurisdiction of the Missouri Commission for the Blind, but not upon the products of those shops. A letter of May 12, 1927, introduced by the defendant, shows that the shop at Springfield, Mo., was known as "Springfield Blind Craft Shop". The biennial report of the Missouri Commission for the Blind for 1927-1928 contains the following statement: "The trade mark 'Blind Kraft' will identify our products and aid in bringing to light unauthorized agents who are now introducing articles not made by the blind as our merchandise."

This is persuasive that prior to 1928 the merchandise referred to had not been identified by a distinguishing mark such as "Blind Crafts", "Blind Craft", or "Blindcraft". The defendant did not in its answer claim that the Commission had used any mark except "Blind-Kraft". To the plaintiff's interrogatory, "When did Missouri Commission for the Blind first adopt and use the trade-mark 'Blind-Kraft', as alleged in defendant's answer heretofore filed in the above entitled proceedings?" the defendant's answer was: "Missouri Commission for the Blind first adopted and used the trademark 'Blind-Kraft' on or about Dec. 15, 1928." Under the pleadings and the evidence, we are satisfied that the defendant cannot claim that the Missouri Commission for the Blind used the mark "Blind-Kraft", or any substantially similar mark, prior to December 15, 1928.

The defendant, by its own admission, has sold its products in "Illinois and other States bordering Missouri, and locally to wholesalers and railroads who shipped to destinations unknown to Defendant. Among such wholesalers and railroads are Butler Bros.; S. S. Kresge Co.; F. W. Woolworth Co.; Kroger Grocery Co.; Great Atlantic and Pacific Co.; Missouri Pacific, Wabash, M-K. & T. and St. Louis and San Francis-

co Railroad companies. * * *" This would indicate a fairly wide interstate distribution of defendant's products. The states bordering on Missouri are Nebraska, Kansas, Oklahoma, Arkansas, Tennessee, Kentucky, Illinois and Iowa.

In an answer to an interrogatory propounded by the defendant, the plaintiff stated: "Products produced by plaintiff and bearing its trade-mark 'Blindcraft' have been sold in (1) St. Louis, (2) outside of St. Louis in the State of Missouri, (3) States east of the Rocky Mountains, and (4) Illinois and neighboring territory continuously since a date prior to 1926. The specific dates and other particulars with respect to the first sales of such products in said territories are not now known, and plaintiff's records relating to the same are not now available. Products so sold by plaintiff and bearing its trade-mark 'Blindcraft' comprise reed and rattan furniture, including chairs, settees, tables, jardinieres, lamp bases, standards and pedestals, lamp shades, couches, stands, smoking sets, shoe stands, hat racks, fern boxes and stools; also trays and baskets made of reed, rattan, hemp, wicker or grass; rugs and mats woven, knitted or sewn together and made of cotton, wool, grass, or hemp; brooms, brushes, dusters and mops; and many other similar products."

In substantiation of this statement, the plaintiff furnished tabulations, made from its original records (which records were subsequently destroyed), purporting to show shipments of plaintiff's products into the defendant's trade territory during the year 1926, during the period 1926 to 1932, and during the period February to September, 1939. These tabulations indicated that sales were made in 1926 in Illinois and Missouri; that during the period 1926 to 1932 sales were made in Illinois, Kansas, Oklahoma and Nebraska; and that in 1939 sales were made in Missouri, Illinois, Iowa, Kansas, Kentucky, Nebraska, Oklahoma, and Tennessee. In answer to the defendant's interrogatories, the plaintiff also stated that it had sold large quantities of its products to wholesalers, jobbers, and others doing an interstate business, including such concerns as Safeway Stores, Inc., Sears Roebuck & Co., Southern Pacific Company, Santa Fe Railway Co., Standard Oil Company, and Shell Oil Company. Ruth A. Quinan, the president and general manager of the plaintiff, who has been associated with it since 1914, testified by deposition that the state-

ment (made in answer to defendant's interrogatories) that plaintiff's products had been sold in Missouri and contiguous territory since a date prior to 1926 was correct. She explained how the tabulations attached to the answers to the interrogatories were made from the original records, and why the original records were no longer available. The credibility of Mrs. Quinan was not questioned. Her testimony was not impeached or contradicted. It cannot be disregarded. Chesapeake & Ohio R. Co. v. Martin, 283 U.S. 209, 216, 217, 51 S.Ct. 453, 75 L.Ed. 983.

We think that the plaintiff's evidence sufficiently established that its products were being sold and distributed in the defendant's trade territory prior to December 15, 1928. It is to be noted that, with the exception of reed and rattan furniture and baskets, the articles made and sold by plaintiff are generally of the same classes as those made and sold by the defendant and by the shops supervised by the Missouri Commission for the Blind.

"* * * a trade-mark protects the owner against not only its use upon the articles to which he has applied it but also upon such other articles as might naturally or reasonably be supposed to come from him. Protection extends to all goods of the same class even though the alleged infringement is not upon the same species of articles." California Fruit Growers Exchange v. Windsor Beverages, Limited, 7 Cir., 118 F.2d 149, 152, 153. See, also, Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 35, 37, 32 L.R.A.,N.S., 274; Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, 409, 410, L.R.A.1918C, 1039; Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962, 963-965; Philco Corporation v. Phillips Mfg. Co., 7 Cir., 133 F.2d 663, 672, 673, 148 A.L.R. 125, 137, 138. It is true that the use, in good faith, of a trade-mark on goods which are noncompetitive will not ordinarily be enjoined. See Horlick's Malted Milk Corp. v. Horlick, 7 Cir., 143 F.2d 32, 35; Walgreen Drug Stores, Inc., v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956, 962-963; Griesedieck Western Brewery Co. v. Peoples Brewing Co., 8 Cir., 149 F.2d 1019, 1023.

We think that, under the evidence and the applicable law, the plaintiff was entitled to a judgment enjoining the defendant from using the trade-mark "Blind-Kraft", which is confusingly similar to the

plaintiff's trade-mark. The defendant may not justify its use of the plaintiff's trade-mark upon the ground that the plaintiff's volume of business was comparatively small or that the defendant was not aware of any competition with the plaintiff's products. The public has a substantial interest in being protected against the confusion which results from the use of similar trade-marks on similar goods in the same trade territory. See Rosenberg Bros. & Co. v. Elliott, supra, 7 F.2d at pages 965–966.

The delay of plaintiff in bringing this action will not prevent the issuance of an injunction against further infringement, but will, under the circumstances of this case, deprive the plaintiff of any right to damages or an accounting. See Menendez v. Holt, 128 U.S. 514, 523–525, 9 S.Ct. 143, 32 L.Ed. 526; Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 35, 41, 42, 32 L.R.A.,N.S., 274.

We think that the District Court erred in concluding that the plaintiff's trade-mark was invalid and in finding that there had been no competition between the plaintiff and the defendant in the same territory with respect to goods of the same class.

The judgment appealed from is reversed, and the case is remanded with directions to grant the plaintiff the injunction for which it prayed.