**ELECTRONIC COMMUNICATIONS, INC., Plaintiff,**

v.

**ELECTRONIC COMPONENTS FOR INDUSTRY CO., ECI Semiconductors, Inc., and ECI Chicago, Inc., Defendants.**

No. 67 C 440(2).

United States District Court
E. D. Missouri, E. D.
Oct. 1, 1969.

Harry S. Kramer, Jr., and William H. Webster, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., Sandoe, Hopgood & Calimafde, New York, N. Y., for plaintiff.

Ralph W. Kalish, St. Louis, Mo., for defendants.

## MEMORANDUM

MEREDITH, District Judge.

This case was tried to the Court without a jury. Plaintiff, Electronic Communications, Inc., is a New Jersey corporation, with a principal place of business in St. Petersburg, Florida. Defendants, Electronic Components for Industry Co., ECI Semiconductors, Inc., and ECI Chicago, Inc., are Missouri corporations, with their principal place of business in St. Louis, Missouri. This Court has jurisdiction over the parties and the subject matter of this action under 28 U.S.C. § 1338 and 15 U.S.C. § 1121. This is an action for infringement of plaintiff's trademark, "ECI", registered in the United States Patent Office, and for unfair competition by defendants for use of such trademark and plaintiff's trade name. Plaintiff is seeking an injunction to prohibit defendants' use of the mark "ECI".

The plaintiff's registrations are No. 706,588, registered November 1, 1960, No. 706,255, registered October 25, 1960, No. 775,282, registered August 18, 1964, No. 836,699, registered October 10, 1967, and No. 849,592, registered May 21, 1968. Each of these registrations is for the trademark "ECI" in block capital letters and in that order, portrayed alone or with an accompanying design. According to the certificates of registration, these marks have been used in connection with radio transmitting and receiving equipment and component parts therefor, electronic circuitry, components, multiplexers, power amplifiers, activators, data link equipment, mobile communications terminals, test and check-out sets for radio-transmitting and radio receiving equipment, flight control equipment and radio-channel multiplexing equipment; the marks have also been used for engineering and consulting services rendered to others on a contract basis, namely, conducting surveys, design studies and research related to electronics, communications, and data processing. Plaintiff has also used "ECI" as a trade name, in connection with its business as a whole and in its subsidiary operations.

Plaintiff first began to use the mark "ECI" in early 1957, at which time the parent company was Air Associates, Incorporated. The mark "ECI" was a natural contraction of Electronic Communications, Inc., which was the wholly-owned subsidiary of Air Associates. In April 1957, following stockholder approval, the name of this subsidiary was adopted as plaintiff's name, and the "ECI" use, which had already begun prior to this formal change of name, continued.

During the period following its first use in 1957, the mark "ECI" has been used by plaintiff, throughout the United States and abroad, in connection with the sale of goods and services valued in excess of $265,000,000.00. Since its first "ECI" use, plaintiff has disbursed in excess of $1,000,000.00 in advertising and promotional expense in connection with the mark "ECI".

Defendants' use of the trademark, service mark, and trade name "ECI" is charged to be an infringement of plaintiff's registered marks and to constitute unfair competition with plaintiff, for use of plaintiff's trademarks, service marks and trade names. Defendants have used "ECI" in connection with the sale or offering for sale electronic components and related items.

As a contraction or abbreviation, the mark "ECI" is completely arbitrary and fanciful and is not descriptive or suggestive of any of the goods, which may generally be termed electronic equipment, in connection with which the mark is used. Neither is the mark "ECI" descriptive or suggestive of any of the plaintiff's business or services,

which may be generally termed electronics business and services, in connection with which the mark is used.

Plaintiff has diligently enforced its rights to the trademark "ECI". In correspondence and in prior litigation, third parties have been caused to cease use of "ECI" in recognition of plaintiff's said mark. The present action was brought after defendants had ignored plaintiff's complaining correspondence and soon after successful conclusion of the prior litigation. Evidence was presented that, in plaintiff's prior litigation, actual confusion had resulted from use of "ECI" on electronic goods of both litigants.

Defendants' president introduced evidence that certain other "ECI" trademarks were presently known to him. Defendants' president testified that there was a 1968 advertisement in which "ECI" appeared on behalf of a Connecticut company, and that he had received in 1968 that company's catalog of electric switches. He said he had corresponded in 1968 with a Massachusetts company in the printed-circuit business that referred to itself as "ECI" in the text of its letter. He said that in 1968 he had received promotional catalog information from a New Jersey company showing "ECI" on electronic counters. Finally, he told of his associate's 1968 correspondence with a California company in the electroplating business and having "ECI" on its letterhead. No proof of a trademark use was made as to any of these companies, and the witness testified only as to replies to correspondence which he initiated after litigation commenced, in the name of Edemco, Inc., which is another one of the family of Missouri corporations having the same principal offices and officers as defendants.

Plaintiff's vice president, secretary and treasurer, testified that he had no prior knowledge of any of the four third-party companies to which defendants' president had testified, except that he had recently seen an advertisement for the Connecticut Company and that

the matter of complaining as to that company's "ECI" use was pending, in the hands of counsel. Defendants did not show that plaintiff had knowledge of any infringing trademark uses and failed to take action against alleged infringers. Plaintiff has enforced its trademark rights against third parties.

Defendant Components is the oldest of the defendants, having been incorporated August 18, 1958, and first used the mark "ECI" in connection with electronic goods when, after formation of defendant Semiconductors in 1961, it began to share with defendant Semiconductors the same printed form for packing slips, billheads, and the like. Such documents then began to, and still do, carry the instruction to customers: "Make checks payable to ECI".

The first use of "ECI" by any of the defendants on electronic goods or on containers for electronic goods occurred after formation of defendant Semiconductors in 1961, when that defendant commenced to use a shipping label featuring "ECI". This was after the first registration of "ECI" by plaintiff in 1960.

The first of defendants' catalogs was issued in 1962 and featured "ECI" in connection with the offering for sale of a wide variety of electronic goods, including amateur radio equipment, antennas, remote controls, radio control system components, radio receivers and transmitters, electronic test instrumentation and electronic component parts. Defendants' president testified that there were aircraft builders and electrospace manufacturers in their clientele of 1962, and these customers would have been among those solicited by defendants' catalog distribution. Defendants have never refused to sell a customer anything from their 1962 "ECI" catalog, and the introduction contains the encouraging words that: "Many new items will be stocked by ECI * * * that are not listed."

Defendants offered no proof of advertising or promotion expenses in any

connection. Until 1968, their only promotion took the form of direct-mail letters to customers, including the mailing of supplier's literature overprinted with identification of one or more defendants. Their first advertising expense of any kind was incurred in 1968, the year after the filing of the complaint herein. Such first advertising was in "Electronic News", the nationally circulated weekly electronics trade newspaper, on which plaintiff importantly relies for publication of news releases, product and capability advertising and employee-recruitment advertising, all in connection with plaintiff's mark "ECI".

Defendants' president testified that defendants decided to advertise in "Electronic News" because this offered an opportunity to expand the basis of sales. The items advertised are "integrated circuits", which are electronic circuitry, one of the items recited in plaintiff's "ECI" registration No. 706,588. Plaintiff manufactures integrated circuits bearing its "ECI" trademark.

The trademark "ECI", being all capital letters and in that order, is identical in plaintiff's trademark registration No. 706,588 and in defendants' shipping labels, stickers, "give-aways" to customers, and forms for billheads, packing slips, etc. All of plaintiff's other trademark registrations also feature "ECI", written in dominating capital letters and in that order, but with different associated figurative designs as the "logo" evolved.

The letterheads, calling cards, address labels, and packing slips of defendant Components have all carried the company name, fully written out, as well as a figurative design which is suggestive of electrons in orbit. Defendants' president testified that this symbol was his company's stylized use of "ECI", but on cross-examination he admitted that in this stylized use, one could not tell which of the letters comes first.

Plaintiff and defendants have used the mark "ECI" in connection with a wide variety of electrical and electronic parts and equipment. Plaintiff, in addition to the goods named in its trademark registrations, has used the mark "ECI" in connection with control-element actuators, navigation equipment, computers, aircraft instruments, ammunition boosters, fuel pumps, and simulators. In addition to the services recited in plaintiff's service mark registration No. 849,592, plaintiff has used the mark "ECI" in services involving development studies in communications theory, radar, electronic countermeasurers, infrared techniques, antennas, solid-state applications, and ferrite phase shifters, as well as in services pertaining to environmental and field testing of electronic equipment, devices, and components. Plaintiff's mark "ECI" is also featured in connection with the technical seminars it conducts for the electronics profession, as is also the case for such seminars sponsored by one or more of the defendants.

The goods of plaintiff and defendants generally consist of either electronic equipment or parts therefor, or parts that would find a use in conjunction with electronic or electrical equipment. There has been no evidence introduced that plaintiff and defendants are direct competitors in the sale of any single item in any single market. However, defendants' president testified that his companies have offered to sell such equipment and that the electronic component parts sold by defendants can go into electronic communications equipment. Both parties have listed "ECI" part numbers, so that customers may order particular electronic component parts. In some instances, parts meeting precisely the same military specification are listed by plaintiff under its "ECI Part No." and are listed by defendants under their "ECI No."

Plaintiff's and defendants' goods, in connection with which the mark "ECI" is used, vary considerably in price range. Some of plaintiff's individual components are low-cost items, and the cost of other of plaintiff's electronic goods ranges up to and considerably in excess of $1,000.00. The highest-price

equipment ever sold by plaintiff cost approximately $200,000.00. Defendants' president testified that the goods it has sold and offered for sale range from less than $1.00 to as much as $2,000.00. Plaintiff's Quality Assurance Manager recognized, as products supplied from plaintiff's stock, on customer order, all the physical-exhibit items introduced to illustrate low-price electronic components sold from stock by defendants.

The volume of plaintiff's electronic-components or spare-parts business has averaged in excess of $1,000,000.00 per year, since 1957, exclusive of the electronic-components business of Scott Electronics, plaintiff's wholly-owned subsidiary. The annual volume of defendants' electronic-components business had modest beginnings and now approximates $2,000,000.00. There is, thus, an overlap in the price ranges of the goods sold by plaintiff and by the defendants, and the volume of the overlapping electronic-components or spare-parts businesses of the parties is substantially the same.

In several instances, the purchasers of goods of defendants and plaintiff were shown to be the same. Both plaintiff and defendants have used "ECI" in their sale of goods to McDonnell Aircraft in St. Louis, Missouri, the plaintiff having made "ECI" sales to McDonnell in 1957, prior to the inception of any of the defendants. Plaintiff also used "ECI" in its sale of facsimile equipment to the Signal Corps in St. Louis in 1958, prior to the conduct of business by any of the defendants. Defendants' president admitted that the industrial market, as they supply it, includes electro-space industries, the commercial and military aviation industry, and the military. In fact, the first page of defendants' 1962 catalog assures the prospective customer that defendants can supply parts with "SigC" designations; SigC is the recognized abbreviation for the Signal Corps, plaintiff's pre-defendants St. Louis customer.

The promotion of defendants' sales, through its catalog efforts, includes of-fers for sale to amateur radio operators, who are the specific customers for the amateur radio equipment which plaintiff has recently launched in the natural expansion of its "ECI" radio communications business.

Considering individually and collectively (1) the identical use of "ECI" by the parties, (2) the arbitrary and fanciful nature of the trademark "ECI", (3) the length of time that plaintiff has manufactured and sold goods under its trademark, (4) the geographical spread of sales of plaintiff under its mark, (5) the dollar amount of plaintiff's goods and services sold under its mark, (6) the amount of advertising and sales promotion expenditures of plaintiff throughout its years of use of the trademark "ECI", (7) the fact that the trademark "ECI" is plaintiff's trade name, identifying plaintiff with all aspects of its business, (8) the relatively brief period of use and small amount of advertising and sales promotion made by defendants of the trademark "ECI", (9) the similarity of goods sold and offered for sale by the respective parties under the trademarks, (10) the overlap of customers and prospective customers of the parties, and (11) the fact that the parties are expanding their product line and diversity of customers, there is likelihood of confusion among purchasers and prospective purchasers of the goods of the parties when marketed under the trademark "ECI".

From a collective consideration of (1) the duration and geographical extent of use of the mark "ECI" by plaintiff, (2) the dollar volume of goods and services sold under the mark by plaintiff, (3) the extensive expenditures for advertising and sales promotion in connection with the mark, (4) the fact that plaintiff has policed the mark against infringers, (5) the fact that plaintiff has never been restrained from using the mark, and (6) because of the evident association in the mind of the purchasing public of the trademark "ECI" with plaintiff as the particular source of goods and services marketed thereunder, the trademark

"ECI" has acquired a secondary meaning as referring to the goods and services of plaintiff.

■ For reasons recited with respect to trademark infringement and, in addition, because plaintiff has established that its mark "ECI" has acquired a secondary meaning indicative of plaintiff as the source of goods and services so marked, and because plaintiff had done substantial business under its mark "ECI" in St. Louis before the St. Louis inception of any of the defendants, the defendants, by the sale of goods and other conduct of their business under the mark "ECI", have unfairly competed with plaintiff. However, it is noted that plaintiff has waived its claim for damages.

Defendants' president testified that he had no knowledge of plaintiff or its use of "ECI" until notice from plaintiff's counsel in October 1962. However, the defendants' first use of "ECI" on or in connection with goods sold had only recently commenced, and two of plaintiff's "ECI" trademark registrations had been in force since 1960. Defendants introduced no evidence to show that any search or investigation was made as to existing trademark registrations or applications to register or trade names, prior to their first use of "ECI" in 1961. In view of defendants' failure to conduct such a search or investigation, and in view of defendants' continued use after defendants had been put on notice in writing by plaintiff, defendants were negligent in persisting in their violation of plaintiff's trademark, service-mark, and trade name rights in "ECI".

Of the above stated facts, there are several that seem to be significant. One of these is that both plaintiff and the defendants are in the same business. They both supply electronic devices, parts, and components. While the main aspect of plaintiff's business is sales and services to the defense industry and defendants' business is oriented toward supplying industry with components, it is clear that there is some overlapping now, and that there will be more overlapping as the businesses expand. It is also clear that plaintiff is a relatively well known supplier in the defense industry and has a nationwide reputation as such, while defendants' trade area consists primarily of the St. Louis and midwest regions.

■ Another significant factor is the exact nature of this suit. Plaintiff seeks only an injunction to prevent the use of "ECI". It has no objection to defendants using a stylized presentation of Electronic Components for Industry Co. that accents the E, C, and I. Its objection is to the use of its registered trademark "ECI". As stated earlier, "ECI" is arbitrary, fanciful and not descriptive of any goods or services involved. Its only meaning is that acquired as it refers to the goods and services of plaintiff. Plaintiff has a proprietory interest in the continuing exclusive use of this mark, and this right will be protected by law. Sweetarts v. Sunline, Inc., 380 F.2d 923, 927 (8th Cir. 1967).

The Lanham Act [15 U.S.C. § 1114(1)] defines a trademark infringer and his liability in the following language:

"Any person who shall, without the consent of the registrant—

"(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

shall be liable in a civil action by the registrant for the remedies hereinafter provided."

Thus, offering and advertising for sale are infringements, and defendants' catalogs are admittedly such offers to sell.

There is no evidence of actual confusion in this case. However, actual confusion is not a prerequisite. David Sherman Corporation v. Heublein, Inc., 340 F.2d 377, 381 (8th Cir. 1965); Sweetarts v. Sunline, Inc., supra. It is the opinion of the Court, that because of the use of the plaintiff's mark, "ECI", by defendants and the similarity of merchandise handled by both parties, actual confusion is likely.

The defendants allege that the plaintiff is guilty of laches by waiting five years after discovery of defendants' use of "ECI" to bring this suit. Plaintiff's evidence showed that it has been involved in other litigation over the use of its mark. Plaintiff is not making a claim for damage or an accounting, therefore, the delay of plaintiff in bringing this action will not prevent the issuance of an injunction against further infringement. San Francisco Ass'n for Blind v. Industrial Aid for Blind, Inc., 152 F.2d 532 (8th Cir. 1946).

It is the opinion of the Court that United States Trademark Registrations No. 706,588, No. 706,255, No. 775,282, No. 836,699, and No. 849,592 are valid, subsisting and owned by plaintiff. They are unrevoked and uncancelled. "ECI" is the valid trademark, service mark, and trade name of plaintiff. Defendants have infringed and are presently infringing such marks and trade name, and, by their use of "ECI" as a trade name, defendants have been and are unfairly competing with plaintiff. Judgment will be entered in favor of plaintiff and against defendants enjoining defendants from continued infringement of plaintiff's said registered trademarks and from continued unfair competition with plaintiff.

The parties will confer and submit a decree in accordance with this memorandum within twenty days from date. If they cannot agree, plaintiff will submit a proposed decree, with a copy to defendants, within thirty days from date.