**ELECTRONIC COMMUNICATIONS, INC., Appellee,**

v.

**ELECTRONIC COMPONENTS FOR INDUSTRY CO., et al., Appellants.**

**No. 20079.**

United States Court of Appeals, Eighth Circuit.

May 6, 1971.

Rehearing Denied May 28, 1971.

488

Ralph W. Kalish, St. Louis, Mo., for appellants.

Roy C. Hopgood, Sandoe, Hopgood & Calimafde, New York City, William H. Webster, St. Louis, Mo., for appellee; Paul H. Blaustein, New York City, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., of counsel.

Before MEHAFFY, GIBSON and BRIGHT, Circuit Judges.

MEHAFFY, Circuit Judge.

This appeal is from an action for infringement of plaintiff's trademark, "ECI," registered in the United States Patent Office, and for unfair competition for use of such trademark and plaintiff's trade name. Plaintiff sought an injunction to prohibit defendants' use of the trademark, "ECI."

Plaintiff is Electronic Communications, Inc., a New Jersey corporation with its principal place of business in St. Petersburg, Florida. Defendants are Electronic Components for Industry Co., ECI Semiconductors, Inc. and ECI Chicago, Inc., Missouri corporations with their principal place of business in St. Louis, Missouri. All defendants are under the same ownership and management and for convenience will be referred to hereafter as defendants. Jurisdiction is based on 28 U.S.C. § 1338 and 15 U.S.C. § 1121.

The district court found that plaintiff was the prior user, having first used the mark "ECI" in early 1957, at which time Electronic Communications, Inc. was a wholly owned subsidiary of Air Associates, Inc. In April, 1957 the name of this subsidiary was adopted as plaintiff's name, and the name, Air Associates, was retained as the name of a subsidiary or division of the company. The district court specifically found that plaintiff had made sales of products marked with "ECI" to McDonnell Aircraft in St. Louis, Missouri in 1957 prior to the inception of any of the defendants. It also found that plaintiff used "ECI" in its sale of facsimile equipment to the Signal Corps in St. Louis in 1958, before the conduct of any business by any of the defendants.

The court held that the mark "ECI" was completely arbitrary and fanciful and was neither descriptive nor sugges-

tive of any of the goods, generally termed electronic equipment, of either of the parties nor descriptive or suggestive of any of plaintiff's business or services. The court also held that plaintiff had diligently enforced its right to the trademark against third parties and brought the present suit after successful conclusion of prior litigation.

The district court found that the first use of "ECI" by any of the defendants on electronic goods or containers for electronic goods occurred after formation of defendant Semiconductors in 1961 when that defendant commenced using a shipping label featuring "ECI," and that this occurred after the first registration of "ECI" ·by plaintiff in 1960. The court found that defendants now advertise electronic goods under the mark "ECI" which are covered by plaintiff's registrations and which are manufactured and sold by plaintiff, and that both companies have listed "ECI" parts numbers and in some instances parts meeting precisely the same military specifications are listed by both plaintiff and defendants under their "ECI" parts numbers.

It was found that the trademark "ECI," being all capital letters and in that order, is identical in plaintiff's trademark registration No. 706,588 and in defendants' shipping labels, stickers, packing slips, forms for billheads and other items. All of plaintiff's other trademark registrations also feature "ECI" written in dominating capital letters and in that order, but with different associated figurative designs. The court held that there was a likelihood of confusion among purchasers and prospective purchasers of goods when marketed under the trademark "ECI," that "ECI" had acquired a secondary meaning as referring to the goods and services of plaintiff, and that defendants were negligent in not conducting an investigation for registrations or applications to register. The court noted that plaintiff was seeking only an injunction and did not object to defendants' using a stylized presentation of Electronic Com-

ponents for Industry Co. that accents the E, C, and I. The court rejected the defense of laches as a bar to injunctive relief for plaintiff. The court held that plaintiff's registrations were valid, unrevoked and uncancelled, and enjoined defendants from continued infringement and from continued unfair competition with plaintiff.

The memorandum opinion of The Honorable James H. Meredith, now Chief District Judge, is reported at 308 F.Supp. 267 (D.C.). We affirm the judgment of the district court.

Broadly stated, the issues before us are whether plaintiff should be barred injunctive relief because of conduct amounting to laches, whether the district court's finding as to the likelihood of confusion was clearly erroneous, and whether the district court's determination as to priority of trademark use was clearly erroneous.

We find solid evidentiary support for all of the court's findings. We have frequently called attention to our function and limitations in cases tried before the court sitting without a jury. Parke-Davis & Co. v. Stromsodt, 411 F.2d 1390, 1394 (8th Cir. 1969). In a decision involving protection of a trademark, Humble Oil & Refining Co. v. American Oil Co., 405 F.2d 803, 814 (8th Cir. 1969), cert. denied, 395 U.S. 905, 89 S. Ct. 1745, 23 L.Ed.2d 218 (1969), Judge Blackmun in discussing the clearly erroneous rule described it as a hornbook rule.

Defendants characterize as the primary issue here laches or equitable estoppel based on plaintiff's delay of five years before instituting this action. We note at the outset of this discussion that plaintiff began using the mark "ECI" early in 1957. In April of 1957 after plaintiff adopted the name of its subsidiary, it used the mark "ECI" extensively throughout the United States and abroad. At this juncture, defendants' first company was not even in business. Its first company was incorporated in August, 1958 and its first use of the

mark on electronic goods or their containers was in 1961, a year after plaintiff's first registration of the mark "ECI."

It is true that some five years intervened before plaintiff brought the instant suit, but when it was ascertained that defendants were using this mark and, we might add, in a territory penetrated by plaintiff, plaintiff corresponded with defendants and notified them of registration of its trademark. Nonetheless, defendants not only persisted in using the mark but even audaciously after institution of this suit incorporated the defendant ECI Chicago, Inc.

Plaintiff had a valid reason for delaying institution of this action. It was engaged in litigation on the same subject against another company for the purpose of protecting its trademark and the present action was commenced shortly after termination of the New York litigation. Additionally, plaintiff was in correspondence with other infringers, and we also note that plaintiff sought no damages in the instant case, but solely an injunction against further infringement. This court held in San Francisco Ass'n for the Blind v. Industrial Aid for the Blind, Inc., 152 F.2d 532, 537 (8th Cir. 1946), that a delay of eight years in bringing an action for infringement of a trademark, after having notified the defendant that the use of the trademark was an infringement, would not prevent the issuance of an injunction but in some cases might deprive the plaintiff of any right to damages.

It is interesting to note the discussion on this subject in an old opinion of this court by the first Judge Sanborn, Stearns-Roger Mfg. Co. v. Brown, 114 F. 939, 945 (8th Cir. 1902), where Judge Sanborn observed: "Moreover, delay in prosecuting other infringers during the time while the validity of a patent is in litigation does not constitute laches. (Citing cases.)"

The cases relied upon by defendants for reversal are readily distinguishable. In Seven-Up Co. v. O-So Grape Co., 177 F.Supp. 91 (S.D.Ill.1959), aff'd, 283 F. 2d 103 (7th Cir. 1960), cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961), the Court of Appeals found that there was something more than delay present and stated that mere delay in bringing suit ordinarily does not affect the right to an injunction against further use of an infringed trademark. The court there said, 283 F.2d at 106:

"Mere delay in bringing suit ordinarily does not affect the right to an injunction against further use of an infringed trademark. (Citing cases.)

\* \* \* \* \* \*

"In the case at bar, much more than mere delay is present."

Defendants advance the argument that Theodore Rectanus Co. v. United Drug Co., 226 F. 545 (8th Cir. 1915), aff'd, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918), distinguished the cases of McLean v. Flemming, 96 U.S. 245, 24 L. Ed. 828 (1878), and Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888), as being restricted to situations where the plaintiff was diligent in giving notice to desist and the defendant's actions had not been innocent, but those factors are present in the instant case. Here, defendants had notice of plaintiff's rights as early as 1962 but contended that there was no infringement and persisted in using the mark despite the notice. The district court found defendants negligent in so doing which is another way of saying defendants were not innocent; hence the distinctions of Rectanus do not apply here. Actually, the holding in Rectanus is based on negligence and is a case where injunctive relief was barred by "estoppel by negligence." Here, the district court held that plaintiff was not negligent and that defendants were negligent in not causing a search to be made of the registrations and in continuing to use the mark after notice. It is obvious that Rectanus is no authority for reversal in this case.

█ In its findings, the district court did not find plaintiff guilty of laches.

The court stated that "the delay of plaintiff in bringing this action will not prevent the issuance of an injunction against further infringement." The district court cited and granted relief upon San Francisco Ass'n for the Blind v. Industrial Aid for the Blind, *supra*, which defendants attempt to distinguish upon the ground that the public at large is not involved before us as in that case. As we view *San Francisco Ass'n*, it directly supports the holding of the district court. There can be no doubt that the district court found only delay and not laches for it said:

"The present action was brought after defendants had ignored plaintiff's complaining correspondence and soon after successful conclusion of the prior litigation."

Certainly we cannot say that the district court's findings on this point are clearly erroneous.

The district court found the delay to be excusable, but it also made other findings as to the equities. It found that plaintiff had diligently enforced its right to the trademark. It found that for the period up to and until 1968 defendants had offered no proof of advertising or promotional expenses. It further found that plaintiff had done substantial business under its trademark in the St. Louis area before the inception of any of the defendants. These facts are supported by the evidence and point to the correctness of the result reached by the district court.

Next, defendants argue that the district court's finding as to the likelihood of confusion was clearly erroneous. In Sweetarts v. Sunline, Inc., 436 F.2d 705 (8th Cir. 1971), we recognized that the issue of likelihood of confusion in a trademark infringement case is one of fact for resolution by the trial court, citing Shoppers Fair of Arkansas, Inc. v. Sanders Co., 328 F.2d 496 (8th Cir. 1964). As we have heretofore pointed out, such factual findings will not be set aside by a reviewing court unless clearly erroneous.

Defendants attack the court's finding "that both plaintiff and defendants are in the same business" as being without support in the record. This finding is not one which the district court listed as supporting its holding of likelihood of confusion, but we observe that after making the complained of statement the court went on to say:

"They both supply electronic devices, parts and components. While the main aspect of plaintiff's business is sales and services· to the defense industry and defendants' business is oriented toward supplying industry with components, it is clear that there is some overlapping now, and that there will be more overlapping as the businesses expand."

Taken in the context of the court's explanation, there is an abundance of evidence to support the court's statement. Defendants' 1962 catalog clearly shows that it is offering to supply electronic parts to the military and the defense industry. Both parties have made sales to McDonnell Aircraft. Defendants' president admitted that the industrial market, as they supply it, includes electrospace industries, the commercial and military aviation industry and the military, as the district court so found.

■ Defendants also argue that neither party sells by trademark, but this argument is without merit since the evidence clearly shows that both parties advertise by trademark and attach their trademarks to goods within the meaning of the Lanham Act, 15 U.S.C. §§ 1114 and 1127.

■ Defendants contend that the purchasing public is not involved, that there is no actual confusion and that purchasers are discriminating, and cite David Sherman Corp. v. Heublein, Inc., 340 F.2d 377, 379, 380 (8th Cir. 1965). They either misunderstand or misconstrue the holding in that decision which is in no way limited to the "purchasing

public" as defendants construe that term. We stated in that opinion:

> "The purchaser contemplated is the ordinary one who uses ordinary caution 'buying under the usual conditions prevailing in the trade, and giving such attention as such purchasers usually give in buying that class of goods', * * * or, as has been said otherwise, 'an ordinarily prudent purchaser'."

There was no proof of confusion in *Sherman* and such proof is not a prerequisite, Sweetarts v. Sunline, Inc., 380 F. 2d 923, 927 (8th Cir. 1967), but it is the likelihood of confusion which establishes infringement, Sweetarts v. Sunline, Inc., *supra*, 436 F.2d 705. We note that the instant record reveals that in plaintiff's prior litigation with third parties, actual confusion had resulted from the use of "ECI" on electronic goods.

Finally, defendants argue that the district court erroneously determined the issue of prior trademark usage. Initially we note that plaintiff has no objection to defendants' using a stylized presentation of Electronic Components for Industry Co. that accents the E, C and I as found in defendants' Exhibits A and J wherein the order in which the letters appear cannot be determined.

■ On this issue defendants first argue that the use of packing slips and labels on the outer or shipping containers does not constitute trademark use and therefore they have not infringed. This argument flies in the teeth of the plain language of the statute. They also argue that the court was in error in finding that they had used a trademark or service mark, claiming that they only used a trade name. They urge that they were not the source of origin of any of the merchandise they handled and therefore in this case there is no evidence of trademark usage, much less service mark usage by defendants. Such a view is far too restrictive a view of trademarks. The court in Victor Tool & Machine Corp. v. Sun Control Awnings, Inc., 299

F.Supp. 868, 874 (E.D.Mich.1968), aff'd, 411 F.2d 792 (6th Cir. 1969), stated:

> "The use of a trademark, however, does not necessarily and as a matter of law impart that the articles on which it is used are manufactured by the user. It is enough that they are manufactured for him, that he controls their production, or that they pass through his hands in the course of trade and that he gives to them the benefit of his reputation or of his name and business style."

■ Defendants cannot avoid the effect of plaintiff's valid registration of its trademark by taking it and adding their name to it. See Menendez v. Holt, *supra*.

■ Defendants then speciously argue that their use of the trademark was prior to that of the plaintiff. The court's finding to the contrary was based on the uncontradicted testimony of defendants' president that none of defendants used "ECI" or those letters in that order on any shipping labels, packing slips, billheads, etc. until after the formation of ECI Semiconductors in 1961. Although defendants argue that "ECI" is found in certain advertisements, announcements and other exhibits which were allegedly made prior to the first use listed in plaintiff's registration, this contention is in direct contradiction to the testimony of defendants' president. In any event, there is no evidence that "ECI" was applied to any goods or cartons for goods of defendants prior to 1961. The right to a trademark is acquired by appropriation and use as such, and actual use in commerce in connection with the goods is necessary to the acquisition of any rights. The mere advertisement of words or symbols without application to the goods themselves is insufficient to constitute a trademark. Victor Tool & Machine Corp. v. Sun Control Awnings, Inc., *supra*; Gray v. Armand Co., 58 App.D.C. 50, 24 F.2d 878 (1928). The use claimed by defendants was not such as to afford them protection for the

mark or to show prior use. We are not here dealing with the question of infringement under the statute, but with prior use, and the questions are separate. See Diederich v. W. Schneider Wholesale Wine & Liquor Co., 195 F. 35 (8th Cir. 1912), and Judge Sanborn's dissenting opinion therein. Even a single use may be an infringement of a registered trademark. See Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F. 2d 87 (9th Cir. 1963), cert. denied, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964).

We have noted defendants' statement that there is here involved a common law trademark. We do not agree, but the peculiar facts in this case would demand the same conclusion in any event.

In summary, we are dealing here with a plaintiff who has used the mark "ECI" since 1957 throughout the world in connection with the sale of goods and services valued in excess of $265,-000,000.00. During this usage plaintiff has expended in excess of $1,000,000.00 in advertising and promotional expenses in connection with its registered trademark. Following defendants' usage plaintiff notified defendants of their infringement, but nonetheless defendants not only persisted in using the mark but even after this litigation was instituted formed another company with the same initials. They branched out and now advertise with catalogs offering for sale a wide variety of electronic goods and feature "ECI" in connection with their sales. Their bills carry the instruction to customers to "make checks payable to ECI." The goods of both plaintiff and defendants generally consist of electronic equipment or parts thereof. Defendants' annual volume of electronic components business, with a very modest beginning, now approximates $2,000,000.-00. There is an overlap in the goods handled and defendants' continued use of plaintiff's trademark cannot with any degree of equity be condoned when plaintiff used the mark "ECI" and registered the same, sold its products in the St. Louis area even before the existence of defendants' companies and notified defendants of its registration of the trademark without deterring them until the trial, the suit having been instituted after successful conclusion of litigation against a company in another section of the country, which was likewise an infringer.

The trial court's findings have solid support in the record evidence and the district court very properly entered an injunction order. We affirm its judgment.