TELEVISION ENTERPRISE NET-
WORK, INC., a New Jersey
Corporation, Plaintiff,

v.

The ENTERTAINMENT NETWORK,
INC., a California Corporation,
Defendant.

Civ.A. No. 85–5067.

United States District Court,
D. New Jersey.

March 7, 1986.

Kenneth D. McPherson, Jr., Waters, McPherson, McNeill, P.A., Secaucus, N.J., for plaintiff.

Tompkins, McGuire & Wachenfeld, Newark, N.J., and Allan Zelnick, Weiss, David, Fross, Zelnick & Lehrman, P.C., New York City, for defendant.

STERN, District Judge.

This is a dispute over the use of the trade name and service mark "TEN." The complaint seeks declaratory judgment, but the case comes before the Court on a motion by defendant, The Entertainment Network, Inc., seeking a preliminary injunction against plaintiff's use of "TEN" while this litigation is pending. For the reasons presented below, defendant's motion will be granted.

## FACTS

Defendant is a successful California corporation founded in 1983 that produces and markets a wide variety of television programs. Defendant's programs have been shown in all fifty states and many foreign countries. Plaintiff is a New Jersey firm that also produces and markets television programs, primarily college and professional sports events up to the present. Plaintiff was originally incorporated in July 1985 as Telstar, Inc., but the next month, a Connecticut firm of the same name and in the same business objected to plaintiff's use of the name. Inasmuch as the Connecticut firm had a registered federal trademark for the name "Telstar," plaintiff decided to change its name.

According to the complaint, plaintiff next "ordered and obtained comprehensive trademark and trade name searches, from a professional searching bureau, of federal and service mark filings, of state trade and service mark filings, and of common law trade name uses of TEN. Plaintiff thus took every reasonable step to inform itself of any proprietary claim to the use of TEN." Telstar, Inc., thereupon changed its name to Television Enterprise Network, as of September 1, 1985, and started advertising with the mark "TEN." Plaintiff's use of "TEN" was recorded under New Jersey's service mark and alternate corporate name statutes. Plaintiff has also applied for New York service mark registration.

On August 30, 1985, plaintiff televised its first live sports programs—two professional boxing matches from Atlantic City, New Jersey. Plaintiff subsequently assembled networks of up to ninety stations for live broadcasts of twelve college football games and ten Notre Dame University basketball games.

On September 11, 1985, defendant sent plaintiff a letter claiming exclusive use of "TEN." Plaintiff refused to stop using "TEN." When threatened with litigation by defendant, plaintiff beat defendant into court by filing the present declaratory judgment action. This is why the accused infringer is the plaintiff in this case.

## DISCUSSION

Defendant's motion claims protection under the Lanham Act, 15 U.S.C. § 1125(a) (1985), as well as New York state law. Plaintiff relies in part on the claim that defendant has no trademark registration for "TEN" and hence no rights under the Lanham Act. Defendant concedes that it did not apply for federal trademark registration for "TEN" until October 3, 1985, over a month after plaintiff began using the same mark. It is well-established, however, that the Lanham Act protects trademarks whether or not they are registered. *D.C. Comics, Inc. v. Powers*, 465 F.Supp. 843, 848 (S.D.N.Y.1978) ("[U]nder this subsection, a common law trademark is entitled to the same protection as its statutory counterpart."); *Wiener King, Inc. v. Wiener King Corp.*, 407 F.Supp. 1274, 1279 (D.N.J.1976), *aff'd in part*, 577 F.2d 731 (3d Cir.1978), *cert. denied*, 430 U.S. 916 (1977).

Whether registered or not, the test for infringement of a trademark under the Lanham Act is likelihood of confusion. *General Time Corporation v. Dunbar Furniture Corporation*, 402 F.2d 806, 807, 56 CCPA 721 (1968). The Third Circuit Court of Appeals has listed ten factors relevant to the determination of whether there has been infringement:

(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent

to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of the public because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.

*Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1229 (3d Cir.1978) (citations omitted). We will consider these factors in order.

■ The marks used by plaintiff and defendant are identical in spelling and very similar as they appear on the firms' letterheads:

<u>PLAINTIFF'S MARK</u>

TELSTAR
is now

Television Enterprise Network

Syndicator and Producer of
Entertainment and Sports Programming

as of September 1, 1985,
our new address is:

780 Third Avenue
Suite 3002
New York, NY 10017
(212) 593-2727

<u>DEFENDANT'S MARK</u>

THE ENTERTAINMENT NETWORK, INC.
11111 SANTA MONICA BOULEVARD SUITE 1210, LOS ANGELES, CA 90025
(213) 478-1266   TELEX: 4948135 TEN LA

Plaintiff is not insulated from the charge of infringement merely because the full name of plaintiff's firm is printed beneath the "TEN" on plaintiff's letterhead. *See United States Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 142 (3d Cir.1981) (defendant not allowed to use plaintiff's "Jaycees" mark even if always as part of "Philadelphia Jaycees" and with disclaimer). The parties display the same "TEN" marks on the television screen, but the likelihood of confusion is enhanced on television by the fact that neither party spells

out the full name of the firm. Defendant's "TEN" beams out onto the screen from a star in the background. Plaintiff's "TEN" shows part of a star glimmering between the T and the E.

The likelihood of confusion is further increased by the fact that it is apparently by their abbreviations that these firms are principally known.

On the second of the *Scott Paper* factors, the strength of the mark, plaintiff argues that "TEN" is weak whether considered as a word in common use or as an abbreviation. However, the fact that TEN is a word in common use in no way detracts from its entitlement to trademark protection. As applied to the television program marketing business, the mark is arbitrary, not descriptive. Courts have accorded trademark protection to "Number 10," *Glen & Hall Manufacturing Co. v. Hall,* 61 N.Y. 226 (1874); "61," *Pratt & Lambert, Inc. v. Chapman & Rodgers, Inc.,* 136 F.2d 909, 913–14, 30 C.C.P.A. 1228 (1943), and other numerals without descriptive significance for the products they apply to. *See generally* 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 18.23, at 132–36 (4th ed. 1983) (many cases).

Initials used to abbreviate corporate names have also frequently been granted trademark protection because they are distinctive and require explanation before they convey any meaning. *Id.* at 133–36 (many examples); *Electronic Communications, Inc. v. Electronic Components for Industry,* 308 F.Supp. 267, 268 (E.D.Mo. 1969) ("ECI" arbitrary as applied to electronic equipment business), *aff'd,* 443 F.2d 487 (8th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 80, 30 L.Ed.2d 63 (1971).

On the third factor mentioned by the *Scott Paper* court, defendant concedes that its programs are expensive. But the programs are not sufficiently expensive to dispel the possibility of confusion. A local television station or advertising agency that dealt with defendant in the past could complete a deal with plaintiff never realizing that plaintiff is not defendant. Deals are cut over the telephone and through signatures on form contracts. There need be no prolonged negotiations, no personal visits, no personal services. Even if the confusion is cured at some intermediate point before the deal is completed, the initial confusion may be damaging and wrongful. *Koppers Co. Inc. v. Krupp-Koppers GmbH,* 517 F.Supp. 836, 844 (W.D.Pa.1981) (citing authorities).

Plaintiff used the "TEN" mark for only a very short time before evidence of actual confusion appeared. This evidence is discussed below under the sixth factor.

■ Plaintiff alleges that its principals acted in good faith in adopting the "TEN" trade name and service mark. Good faith is irrelevant to the issue of likelihood of confusion and is not a defense to an infringement action because the trademark laws seek to protect the public. *Johnson & Johnson v. Quality Pure Manufacturing, Inc.,* 484 F.Supp. 975, 979 (D.N.J. 1979); 3A R. Callman, § 20.49. A guilty state of mind, on the other hand, is very relevant to determining whether the public is likely to be deceived. 3A R. Callman, § 20.49, at 289–90. *See National Lampoon Inc. v. American Broadcasting Co., Inc.,* 376 F.Supp. 733, 747 (S.D.N.Y.) (intent to deceive "raises a presumption that deception and confusion resulted") (quoting *National Van Lines v. Dean,* 237 F.2d 688, 692 (9th Cir.1956)), *aff'd,* 497 F.2d 1343 (2d Cir.1974).

In his deposition, the president of plaintiff firm, Fred Botwinik, depicts the selection of the names, "Television Enterprise Network" and "TEN" as innocent; the decision was allegedly made without knowledge of any significance these names have in the industry. Tr. of Dec. 9, 1985 at 54. In view of the fact that Mr. Botwinik has spent his entire career in television broadcasting, his testimony on the origin of his firm's names stretches credibility to the breaking point. Even if plaintiff has raised a genuine issue of fact here, it would not pose an obstacle to a motion for preliminary injunction because good faith is not a defense to infringement, and bad faith is

not a necessary element of infringement, merely a factor to be considered. *Telechron, Inc. v. Telicon Corp.*, 198 F.2d 903, 908 (3d Cir.1952).

The sixth *Scott Paper* factor is evidence of actual confusion. In the short time plaintiff operated under the name "TEN" before this motion was filed, defendant was able to assemble several affidavits of local television station officers and advertising agency employees who stated they were confused by the similarity of the parties' names. This evidence of actual confusion is convincing evidence that there is likelihood of confusion. *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir.1975); 3A R. Callman, § 20.106, at 22 (actual confusion "highly probative" of likelihood of confusion).

The remaining factors listed by the *Scott Paper* court assume that the parties' goods or services are not identical or in competition. In the present case, however, plaintiff and defendant are in the same business and sell to the same customers—television stations, cable networks, and advertising agencies.

Plaintiff suggests that its programming is limited to sports events, but this does not create a sufficient distinction between plaintiff's business and defendant's. Plaintiff's president admits his firm may expand into other kinds of programming and has already represented itself to the public as syndicating entertainment and sports programs. Tr. of Dec. 9, 1985 at 36, 79–80. Moreover, defendant has not and does not limit its programming to exclude sports events.

Plaintiff argues that it has staked a claim to use "TEN" in the New York and New Jersey area by virtue of the facts that its principal office is in New York, and it has applied for service mark registration in New York for "TEN," as well as authorization to do business in New Jersey and service mark registration in New Jersey. Defendant has done none of these things in New York or New Jersey. Yet all of this is of little significance to the present motion. Plaintiff admits that its programs are broadcast by many stations all over the country. Defendant also broadcasts in many states, including New York and New Jersey. Defendant's programs were broadcast in New York and New Jersey starting in 1984, before plaintiff was formed. Defendant frequently deals with advertising agencies in New York. Defendant is the prior user of "TEN" in New York and New Jersey.

We find that plaintiff and defendant market competing goods and services. "Where the trademark owner and the alleged infringer deal in competing goods or services, the court need rarely look beyond the mark itself." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir.1983).

■ The evidence in this case is overwhelming. We find a reasonable probability that plaintiff's use of "TEN" violates the Lanham Act, 15 U.S.C. § 1125(a) (1985). Defendant has demonstrated infringement and probability of loss of good will. The damages in such a case are by their nature incalculable and irreparable. *See Omega Importing Corp. v. Petri-Kine Camera Co., Inc.*, 451 F.2d 1190, 1195 (2d Cir.1971); *Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F.Supp. 693, 711 (D.N.J.1977). Defendant is likely to continue to suffer irreparable injury if an injunction does not issue.

The injury to defendant far outweighs the harm that injunctive relief would impose on plaintiff. It is necessary only for plaintiff to remove "TEN" from signs, letterheads and promotional materials. Plaintiff is free to retain its full name, "Television Enterprise Network," if it chooses to do so.

Trademark infringement actions affect not only the parties; the interests of the consuming public are equally involved because of "the right of the public to be free of confusion." *James Burrough, Ltd., v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir.1976); *see generally*, 3 R. Callman, § 17.14, at 57–58. The public interest is therefore served by injunctive relief to protect trademarks.

There is no factual dispute in this case which, if resolved in favor of plaintiff might militate against granting injunctive relief in favor of defendant. "It has long been recognized that a preliminary injunction may issue on the basis of affidavits and other written evidence, without a hearing, if the evidence submitted by both sides does not leave unresolved any relevant factual issue." *Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163 (3d Cir.1982) (affirming grant of preliminary injunction without evidentiary hearing in trade secrets case); *Securities & Exchange Commission v. G. Weeks Securities*, 678 F.2d 649, 651 (6th Cir.1982) (oral testimony not a prerequisite to a fair hearing where decision on whether to grant preliminary injunction turns on legal issues); *Fotomat Corp.*, at 711 (issuing preliminary injunction without evidentiary hearing in trademark case); *see generally* 11 C. Wright & Miller, *Federal Practice and Procedure* § 2949, at 474–75 (1978 & 1985 Supp.).

Therefore the motion for a preliminary injunction is granted.