SWEETARTS, a corporation, Appellant,

v.

SUNLINE, INC., and Menlo F. Smith,
Appellees.

No. 18587.

United States Court of Appeals
Eighth Circuit.

July 18, 1967.

Rehearing Denied Aug. 24, 1967.

J. Pierre Kolisch, Portland, Ore., for appellant and filed brief with John W. Stuart, Portland, Or., and John D. Pope, III, St. Louis, Mo.

Ralph W. Kalish, St. Louis, Mo., for appellees and filed brief.

Before VOGEL, Chief Judge, and GIBSON and HEANEY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

This is a suit between two candy manufacturers, each using the trademark "SweeTarts". The trial court held that plaintiff's registered trademark was invalid for nonuse and that plaintiff-appellant was not entitled to injunctive relief for violation of its common law technical trademark or for unfair competition. Plaintiff appeals.

The facts of this case are as follows: Plaintiff's predecessor Sweetarts Company of Dundee, Oregon commenced business in 1926. It manufactured and sold glazed and candied fruits under the trademark "SweeTarts". This mark was registered with the United States Patent Office in 1928 for stuffed dried prunes.

In 1930 the Sweetarts Company moved from Dundee to Portland, Oregon and in the mid-1930s began making various types of candy, including chocolates and toffee, which it also marketed under the name "SweeTarts".

In 1947 Patrick Johnson, the president of plaintiff corporation, purchased the Sweetarts Company as a going business. Part of the assets of the Company was the exclusive ownership of the mark "SweeTarts". Johnson who is the chief shareholder, named his corporation simply "Sweetarts" and continued the business without breaking the continuous use of the trademark "SweeTarts" on candy. Since 1947 plaintiff has sold various types of candies, in various types of packages, at various prices all under the corporate name and trademark "SweeTarts". For a short period of time plaintiff manufactured 10 cent toffee bars and 39 cent bags of toffee, the sale of which has since been discontinued.

About 90% of the candy presently made by plaintiff is a butter toffee, individually wrapped, and packaged in boxes selling retail for $1.00. These butter toffees are also packaged in decorator tins and sold at prices ranging from $1.35 to $5.75. The remaining 10% of plaintiff's sales are of mixed chocolates with prices from $1.70 to $7.70 a box.

Plaintiff does not market its candy through usual commercial channels but relies mainly upon direct mail orders and personal solicitations by its president. About 87% of plaintiff's sales come through orders from fraternal organizations, the best single customer being Job's Daughters. These fraternal organizations, through their members, sell the candy made by plaintiff to the public, thus securing funds for organizational activities. Most of the remainder of plaintiff's candy is sold to various companies that distribute the candy to customers and employees as seasonal gifts.

With the exception of the boxes sold to Job's Daughters in Oregon, all of plaintiff's candy is clearly labeled or marked in large letters with the name "SweeTarts". The Job's Daughters in Oregon receive their candy in a specially designed box on which a label is attached to the side stating that the candy was manufactured for Job's Daughters by "SweeTarts, Inc."

Plaintiff is a small concern. It expends virtually nothing for advertising and has annual sales in the neighborhood of $135,000. Plaintiff's principal market area is the states of Washington, Oregon and California. Since 1947 sales in these three states has totaled something over $1,700,000. Plaintiff also has had significant sales in Idaho, Montana, Pennsylvania, Florida, Wyoming, Kansas, Illinois, Nebraska, Indiana, and New York as well as isolated sales in twenty-two other states and Washington, D. C.

Defendant, Sunline, Inc., began business in 1952 in St. Louis, Missouri. Until 1963 defendants sold an artificially flavored powder formula for use in making soft drinks under the names "Lik-M-Aid" and "Pixy Stix". In 1963 defendants decided to start selling the same formula as a candy compressed into tablet form. Defendant Menlo F. Smith, president of Sunline, selected the name "SweeTarts" for the new product. A trademark search was made in the United States Patent Office, and the search turned up the name "Sweetheart" for candy products, "Sweetart" for cranberries, and plaintiff's "SweeTarts" for dried prunes. Smith decided to take a "businessman's risk" and use the mark "SweeTarts".[1]

Defendants began test marketing their new "SweeTarts" candy in June 1963. By October 1963 defendants began pro-

1. Defendant corporation sought to register its mark with the United States Patent Office in November 1963. Registration was refused on the basis that there would be a likelihood of confusion between defendants' mark and prior registered marks. This determination, however, can have no direct influence upon our decision herein. We are concerned solely with the common law rights between the two parties who are now before the court.

motion among candy brokers and commenced large scale nation-wide marketing.

Defendants' candy is presently sold throughout the United States at over 200,000 retail establishments. It is marketed through the usual channels, in which the candy is initially sold to candy brokers, who, in turn, place the candy for sale on the counters of supermarkets, drugstores, restaurants, etc. To the time of trial defendant corporation had sold over $8,000,000 worth of its "SweeTarts" and expended over $2,000,000 in promotion and advertising.

The candy sold by defendants is a small brightly colored, powdery tablet with an artificial fruit flavoring. It is described as having an extremely tart flavor designed primarily for "kids". The tablets are packaged in tinfoil, about twelve to a package, and sold for 5 cents a package. The tinfoil wrappers are colorfully marked across their face with the word "SweeTarts".

In October 1963 plaintiff objected by letter to defendants' use of the mark "SweeTarts". Unable to secure satisfaction from the defendants, plaintiff sought to enjoin the use of the "SweeTarts" mark by filing this suit in the United States District Court for the Eastern District of Missouri in June 1964.

The trial was to the court without a jury. The trial judge found that plaintiff's trademark registration, though renewed in 1948, was invalid for lack of use. On the charge of unfair competition and common law trademark infringement, the court found that defendants adopted the mark in good faith and since there was no likelihood of confusion plaintiff was not entitled to injunctive relief.

On this appeal plaintiff admits that its trademark registration for prunes is invalid, but contends that it has a valid common law trademark on its candy that was adopted and used prior to defendants' use of the same mark. Further, appellant argues that as a matter of law there is a likelihood of confusion among consumers resulting from defendants' use

of this mark. Consequently, though no claim is made for money damages, nor has any loss of sales been proved, appellant contends that it is entitled to injunctive protection, at least within its existing market areas. We agree.

We think the trial court erred in failing to hold and find that plaintiff had a good common law technical trademark irrespective of the registered trademark for use on dried prunes and was clearly erroneous under Rule 52(a) Fed.R.Civ.P. in finding that there was no likelihood of confusion between the two trademarks of plaintiff and defendants by the ultimate purchasers or consumers.

A trademark is generally any name, sign, or mark which one adopts to denominate commercial goods originating from him. 3 Callmann, Unfair Competition and Trademarks, § 76.2(a), p. 1186 (2nd Ed. 1950); Restatement of Torts, § 715; 87 C.J.S. Trademarks § 1, p. 218. If the word used to denominate the goods is arbitrary, unique, distinct, and non-descriptive it is known as a technical trademark. Blisscraft of Hollywood v. United Plastics Company, 294 F.2d 694, 700 (2 Cir. 1961). A technical trademark is a common law property right that exists independently of statutory provisions for registration. Trademark Cases, 100 U.S. 82, 25 L.Ed. 550 (1879); Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 333, 59 S.Ct. 191, 83 L.Ed. 195 (1938); Brown & Bigelow v. B-B Pen Co., 191 F.2d 939, 942 (8 Cir. 1951); 4 Callmann, Unfair Competition and Trademarks, § 97.3(a), p. 2066–68 (2nd Ed. 1950); 1 Nims, Unfair Competition and Trademarks, §§ 185, 199(a), 214 (4th Ed. 1947).

It is generally said that exclusive right to use a mark belongs to the first who appropriates it and uses it in connection with a particular business. Canal Company v. Clark, 13 Wall. 311, 80 U.S. 311, 322, 20 L.Ed. 581 (1871); 3 Callmann, supra, § 76.1, p. 1182. In resolving the issue of infringement, that is, in determining if the prior

user of a mark is entitled to protection against a subsequent user, the test universally applied is whether there is a likelihood of confusion among the consumers. David Sherman Corporation v. Heublein, Inc., 340 F.2d 377 (8 Cir. 1965); United Drug Co. v. Obear-Nester Glass Co., 111 F.2d 997 (8 Cir. 1940), cert. denied 311 U.S. 665, 61 S.Ct. 22, 85 L.Ed. 427. Hanson v. Triangle Publications, 163 F.2d 74 (8 Cir. 1947), cert. denied 332 U.S. 855, 68 S.Ct. 387, 92 L.Ed. 424; 3 Callmann, Unfair Competition and Trademarks, § 84.1 at pp. 1628–1629 (2nd Ed. 1950). Plaintiff need not show actual confusion. David Sherman Corporation v. Heublein, Inc., supra. Nor need plaintiff show actual or possible monetary injury. Durable Toy & Novelty Corporation v. J. Chein & Co., 133 F.2d 853, 855 (2 Cir. 1943) cert. denied 320 U.S. 211, 63 S.Ct. 1447, 87 L.Ed. 1849.

Applying this law to the facts of this case we believe it is evident that plaintiff is entitled to relief. Plaintiff corporation adopted the word "SweeTarts" to be used on candy made by it. The word is not to be found in the dictionary. To our ears it is uncommon, arbitrary, and distinct. See discussion of "Sweetheart" as a valid mark in Purex Corporation, Ltd. v. Maryland Paper Products Co., 287 F.2d 186 (CCPA 1961).

 The word is certainly not descriptive of plaintiff's toffee and mixed chocolates. Consequently, we believe "Swee-Tarts" is a strong technical trademark that derives additional strength from the fact that it is also plaintiff's corporate name. Stork Restaurant v. Sahati, 166 F.2d 348, 353 (9 Cir. 1948). This mark was adopted by plaintiff's predecessor and used by plaintiff and its predecessor on candy made by them since the 1930s. Plaintiff has a proprietory interest in the continuing exclusive use of this mark on its candy, and this right will be protected by law.

 Defendant has adopted the very same word and used it to denominate its candy product. We think the likeli-

hood of confusion arising from this adoption is manifest. The words are exactly the same, each using a large S and large T in the spelling. They are applied to the same general class of product, candy. This, on its face, bespeaks of confusion and infringement. Sweet Sixteen Co. v. Sweet "16" Shop, 15 F.2d 920 (8 Cir. 1926).

We do not believe the candy purchasing public who might be exposed to both plaintiff's and defendants' candy can escape the confusion. A person who sees defendants' 5 cent tart tablet for "kids" marked "SweeTarts" will naturally believe that plaintiff's butter toffees and assorted chocolates, also marked "Swee-Tarts", come from a common source. Plaintiff, as well as the public, is entitled to protection from a situation, such as this, that is latent with possibilities of confusion, mistake or deception. Plaintiff has the right to make and keep its own reputation without entrusting it to others over whom it cannot exercise any control. Some may treat it tenderly, nurture and enhance it, while others during the course of time may tarnish or degrade it; and the public is confused and suffers along with the infringed.

 Different marketing techniques and price differential are not controlling. The price is competitive, the products are both types of candy, and each is ultimately purchased by the same class of persons. While defendants' product is oriented towards "kids", the younger group also buys chocolates and toffee; and even adults could not assess the merits and relative appeal of the products until they sampled the candies.

"[A] trademark protects the owner against not only its use upon the articles to which he has applied it but also upon such other articles as might naturally or reasonably be supposed to come from him. Protection extends to all goods of the same class even though the alleged infringement is not upon the same species of articles." California Fruit Growers Exchange v. Windsor Beverages, Ltd., 118 F.2d 149, 152–153 (7 Cir. 1941).

Nor can we be swayed by the relative size of the two litigants. Ansehl v. Williams, 267 F. 9 (8 Cir. 1920). Plaintiff, regardless of its economic size, having appropriated the use of this mark to designate its candy over thirty years ago is entitled to continued use of this mark free from the almost assured confusion that would result from defendants' use of the same mark on its candy. The test is not confusion but likelihood of confusion. United Drug Co. v. Obear-Nester Glass Co., 111 F.2d 997 (8 Cir. 1940), cert. denied 311 U.S. 665, 61 S.Ct. 22, 85 L.Ed. 427. Plaintiff's vested and existing rights cannot be overpowered merely by defendants' comparatively massive size and generous promotional expenditures. Dwinnell-Wright Co. v. National Fruit Product Co., 140 F.2d 618, 624 (1 Cir. 1944).

"The defendant may not justify its use of the plaintiff's trademark upon the ground that the plaintiff's volume of business was comparatively small * * *." San Francisco Ass'n for the Blind v. Industrial Aid for the Blind, 152 F.2d 532, 537 (8 Cir. 1946).

We believe that plaintiff has a valid common law trademark, which defendants have infringed.

Having decided this, the question now is the geographical extent to which plaintiff is entitled to protection. Plaintiff contends that defendants had proper notice of plaintiff's prior trademark, and with this knowledge and in bad faith, adopted plaintiff's mark. Consequently, plaintiff argues that defendants' unfair competition entitles plaintiff to blanket, nation-wide protection. The trial court specifically found that the defendants adopted the mark in good faith. Though the evidence is susceptible to the inference plaintiff wishes us to place upon it, we do not believe the trial court's finding of defendants' good faith is clearly erroneous. The facts and inferences found by the trial court are clearly susceptible to the conclusion that defendants adopted the mark in good faith, and that finding, in light of Rule 52(a) Fed.R.Civ.P., will not be disturbed by us.

Over fifty years ago the Supreme Court in Hanover Star Milling Company v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916), set forth an exception to the blanket application of the "prior use" rule. At page 415, 36 S.Ct. at page 361 the Court stated:

"In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote from one another, the question of prior appropriation is legally insignificant, unless at least it appear that the second adoptor has selected the mark with some design inimical to the interests of the first user * * *."

Consequently, accepting the trial court's finding of defendants' good faith, we believe that plaintiff is not entitled to protection in market areas independently developed by defendants. However, defendants' right to use the same mark in territory remote from territory developed by plaintiff does not allow defendants to invade the territory already occupied by plaintiff's product. Plaintiff's prior use of its trademark within a given market area entitles it to exclusive use of that mark within that area. San Francisco Ass'n for the Blind v. Industrial Aid for the Blind, 152 F.2d 532 (8 Cir. 1946). As was held in the landmark case of United Drug Company v. Theodore Rectanus Company, 248 U.S. 90, 101, 39 S.Ct. 48, 52, 63 L.Ed. 141 (1918), "[B]eing the newcomer in that market [defendant] must enter it subject to whatever rights had previously been acquired there * * *." Plaintiff has a valid prior common law trademark and is entitled to protection within the market area first developed by it.

We are now confronted with the factual question as to precisely what is plaintiff's market area. We believe

the record clearly establishes that Washington, Oregon, and California are market areas in which, as a matter of law, plaintiff is entitled to trademark protection on its product. Likewise, we believe the record is equally clear that in many states business transactions have been nonexistent or so small, sporadic, and inconsequential that present or anticipated market penetration is *di minimus.*[2] Consequently, plaintiff as a matter of law, is not entitled to protection in these areas against defendants' good faith adoption of the same mark. However, there remain a number of states in which plaintiff does or has done some measurable business.[3] To what extent these areas are within plaintiff's effective market area, we believe presents a genuine factual issue. As the trial court did not make a finding upon plaintiff's market area, we believe the best course is to remand this case to the trial court so that it may hear the evidence and make the findings necessary to resolve this factual question.

 In determining this issue the trial court should weigh all the factors including plaintiff's dollar value of sales at the time defendants entered the market, number of customers compared to the population of the state, relative and potential growth of sales, and length of time since significant sales. Though the market penetration need not be large to entitle plaintiff to protection, Sweet Sixteen Co. v. Sweet "16" Shop, 15 F.2d 920 (8 Cir. 1926), it must be significant enough to pose the real likelihood of confusion among the consumers in that area between the products of plaintiff and the products of defendants.

Accordingly, the decision of the trial court is reversed and this case is remanded for the purpose of determining the effective market area of plaintiff and thereafter granting to plaintiff the injunctive relief necessary to protect its trademark rights within that market area.

---

2. In fifteen states plaintiff has never recorded a sale. In the following eight states the total sales from 1947 to May 1965 were less than $75. Plaintiff's Exhibit 24 indicates the exact total sales for each state: Massachusetts, $11.37; Michigan, $72.91; New Mexico, $35.04; Oklahoma, $69.03; Rhode Island, $3.75; South Dakota, $48.31; Texas, $12.00; Utah, $38.02.

3. As an example, in each of the states of Idaho, Illinois, and Montana in the period 1947 to May 1965 plaintiff has sold over $20,000 worth of its candy. In a partial year 1964 plaintiff sold over $1,000 worth of its candy in the states of Wyoming and Pennsylvania. Sales in the states of Florida, Kansas, Indiana, and Nebraska, and New York since 1947 have ranged from $1,077 in Indiana to $7,348 in Kansas.