The **NATIONAL ASSOCIATION FOR HEALTHCARE COMMUNICATIONS, INC.**, Plaintiff,

v.

**CENTRAL ARKANSAS AREA AGENCY ON AGING, INC.**, Defendant.

### No. 4:98CV00706 SWW.

United States District Court, E.D. Arkansas, Western Division.

Jan. 31, 2000.

---

Gary N. Speed, Mark Alan Rogers, Speed & Rogers, P.A., Little Rock, AR, Mark Murphey Henry, Little Rock, AR, for Plaintiff.

Overton S. Anderson, Mariam T. Hopkins, Scott D. Provencher, Anderson, Murphy & Hopkins, L.L.P., Little Rock, AR, Hermann Ivester, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, AR, for Defendant.

### MEMORANDUM OPINION AND ORDER

SUSAN WEBBER WRIGHT, Chief Judge.

This is a case in which plaintiff, The National Association for Healthcare Communications, Inc. ("Healthcom"), an Illinois corporation, has sued Central Arkansas Area Agency on Aging, Inc. ("CAAAI,")[1], a private, non-profit corporation organized under the laws of Arkansas, for unauthorized use of the mark "CARELINK." The complaint alleges causes of action for unfair competition under 15 U.S.C. § 1125(a) and common law trademark infringement. Defendant counterclaims for unfair competition under the federal and common law and trademark infringement under Ark. Code Ann. § 4–71–212.

1. Defendant states its correct name is Central Arkansas Area Agency on Aging, Inc. Plaintiff explains that it sued defendant in the name carried by the Arkansas Secretary of State's Office, Central Arkansas Area on Aging, Inc. The Clerk has changed the style of the case to reflect the correct name of defendant.

The parties have filed cross-motions for summary judgment. After full consideration of the cross-motions, the Court finds that plaintiff's motion should be denied and defendant's motion should be granted.

## I.

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett,* 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Fed.R.Civ.P 56(e).

It is settled doctrine that the fact that both parties have moved for summary judgment does not permit the entry of summary judgment if disputes remain as to material facts. However, cross-motions for summary judgment do permit a court to assume that no evidence other than the pleadings and supporting documents offered by the litigants need be considered in order to determine whether a genuine issue of material fact exists in dispute.

*Board of Trustees of University of Arkansas v. Professional Therapy Services, Inc.,* 873 F.Supp. 1280, 1283 (W.D.Ark.1995).

## II.

The following is a summary of the undisputed facts presented by the parties.

Plaintiff Healthcom is an Illinois corporation engaged in the business of selling or leasing medical monitoring devices and offering monitoring services to monitor the health status of patients who stay at home. The services are marketed to individuals and to health care providers, and include remote electronic monitoring by Healthcom's CARELINK Support Center. Defendant CAAAI is a private non-profit agency which offers in-home services and other services and support for older people in the Central Arkansas area.[2]

At least as early as 1992, Healthcom began using the CARELINK mark in Illinois in connection with a two-way telephone emergency response system for elderly and infirm persons (a personal emergency response system service referred to hereafter as "PERS"). Healthcom began its efforts to expand its CARELINK services to Arkansas in 1992 through letters, direct mail, telephone calls, and personal solicitations. On or about November 20, 1992, Dorothy Cox or someone acting on her behalf contracted with Healthcom to provide PERS service to Cox at her residence in Gillette, Arkansas. Healthcom provided PERS service to Cox beginning in December 1992 or January 1993, and ending no later than April 1994.

In the fall of 1994, CAAAI selected a public relations agency to develop a marketing plan for CAAAI. Part of the mar-

---

**2.** For purposes of this case, the Central Arkansas area is comprised of six counties: Pulaski, Lonoke, Faulkner, Monroe, Saline, and Prarie.

keting plan consisted of selecting a new name and service mark. One of the focus groups used in the marketing plan selected the name and mark CARELINK. On January 28, 1995, the CAAAI's Board of Directors adopted CARELINK as CAAAI's new name and service mark. At no time during the selection process was CAAAI's President and Chief Executive Officer, Elaine Eubank, the public relations agency, any member of a focus group, or any member of CAAAI's Board of Directors aware of Healthcom or its use of CARELINK in Arkansas or anywhere else. On March 23, 1995, CAAAI registered its service mark with the Arkansas Secretary of State, claiming a first use of March 23, 1995.

Prior to 1995 and the time CAAAI began using the mark CARELINK, Healthcom had spent over $50,000 in marketing expenditures to establish CARELINK provider contracts within the state of Arkansas, including Central Arkansas. Prior to 1995 and the time CAAAI began using the mark CARELINK, Healthcom assigned employee James Joyner, a full-time sales representative, to market the Healthcom CARELINK services in sales territory including Arkansas, Tennessee, and Mississippi. Mr. Joyner made at least 31 personal sales visits in Arkansas, attempting to sell Healthcom's CARELINK services to healthcare providers. In addition, Joyner made at least 89 telephone calls to Arkansas healthcare providers to sell the Healthcom CARELINK services. From 1992 to date and well prior to the time CAAAI began using the CARELINK mark in 1995, Healthcom sent direct mail solicitations at least semiannually to Arkansas healthcare providers to market its CARELINK services. Healthcom has continuously marketed its CARELINK services in Arkansas from 1992 to date and has never ceased its marketing efforts in the state.

At the time CAAAI began using the CARELINK mark in 1995, Healthcom had no current subscriber in the state of Arkansas, although it had provided services to Cox in 1993, and was continuing mar-

keting efforts to gain contracts with healthcare providers and other subscribers, which it did obtain later. Healthcom currently has seven contract healthcare providers in the state of Arkansas offering CARELINK services to patients located in Wynne, Lake Village, Camden, Harrison, Monticello, Magnolia, and Mena. These provider contracts relate to CARELINK monitoring services being provided to 351 patients. Healthcom has actively marketed its CARELINK services to at least 20 other hospitals and healthcare providers in Arkansas.

Although CAAAI operates only in the six-county area of Central Arkansas, CAAAI attempted in 1996 to enforce its state trademark registration for the CARELINK mark against a Healthcom CARELINK hospital in Boone County Arkansas, which is not located in Central Arkansas and does not border Central Arkansas. The threatened hospital was North Arkansas Medical Center in Harrison, Arkansas.

On May 4, 1999, Healthcom applied for a federal trademark registration on the mark CARELINK based upon its claim of first use of the mark in interstate commerce at least as early as January 4, 1993, in connection with "electronic transmission by telephone or health-related information for individuals, and messaging of information by telephone communication to health care providers." Such application is pending before the United States Patent and Trademark Office. CAAAI applied in 1997 for federal trademark registration on the CARELINK mark for certain services based upon alleged use in interstate commerce at least as early as March 23, 1995, but it later abandoned the application.

Healthcom seeks a judgment declaring that it has superior rights to the CARELINK mark, a prohibition against CAAAI using the mark in Arkansas, and damages. CAAAI seeks a judgment dismissing Healthcom's complaint and declaring that CAAAI's use of the CARELINK name and mark is entitled to protection and

prohibiting Healthcom from using the name in the State of Arkansas or alternatively, in the Central Arkansas area.

### III.

The Lanham Act offers protection against infringement of registered and unregistered marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Section 43(a) of the Act, 15 U.S.C. § 1125(a)(1) provides:

> Any person who, or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin ... which—(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To establish a claim for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must prove that (1) it owns a distinctive trademark that is entitled to protection and (2) defendant's use of a similar mark is likely to confuse consumers about the source of the goods or services. *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598 (8th Cir.1999). The elements of a statutory claim under § 1125(a) and common law claims of unfair competition and trademark infringement are the same, and the purpose of both is to prevent one person from passing off his goods or services as the goods or services of another. *Transfer Print Foils, Inc. v. Transfer Print America, Inc.*, 720 F.Supp. 425, 435 (D.N.J.1989). "Generally speaking, the same set of facts in support of a suit for infringement of a trademark is looked for as in one for unfair competition. Trademark infringement is but a part of the broader law of unfair competition, and facts supporting a suit for infringement

and one for unfair competition are substantially identical." *Heaton Distributing Co. v. Union Tank Car Co.*, 387 F.2d 477, 483 (8th Cir.1967) (citations omitted).

The parties agree that CARELINK is a service mark that is entitled to protection and neither party disputes that its substantial use in the same market area would cause confusion. The issue is which party has the exclusive right to use the mark in Arkansas, or alternatively, in Central Arkansas.

### A.

In Count I of its complaint, Healthcom alleges that CAAAI violated the provisions of 15 U.S.C. § 1125(a) and in Count II asks for declaratory judgment that Healthcom has first use of the CARELINK mark under § 1125(a) and the common law. In Count III, Healthcom alleges trademark infringement under the common law.

Plaintiff Healthcom argues it is entitled to summary judgment on Counts I and II because it is undisputed that it used the service mark in interstate commerce prior to CAAAI's use. It asserts it is entitled to summary judgment on Count III because it used the mark first in Arkansas. Defendant CAAAI responds in opposition, maintaining that Healthcom cannot show that it used the CARELINK mark in Arkansas prior to CAAAI's first use of the mark. Defendant CAAAI argues that two opinions by the Eighth Circuit Court of Appeal, *Sweetarts v. Sunline, Inc.*, 380 F.2d 923 (8th Cir.1967) (*Sweetarts I*), and *Sweetarts v. Sunline, Inc.*, 436 F.2d 705 (8th Cir.1971) (*Sweetarts II*), provide the framework for analyzing both the statutory and common law trademark infringement claims before the Court. The *Sweetarts* cases involved a plaintiff, located in Oregon, that began making various types of candy in 1947 and marketing it under the name "SweeTarts." The plaintiff relied mainly on direct mail orders and personal solicitations by its president. The bulk of its sales were in Washington, California, and Oregon; the plaintiff also had

significant sales in a number of far-flung states as well as isolated sales in 22 other states and the District of Columbia. The defendants, a St. Louis, Missouri business and its president, began selling candy under the name "SweeTarts," and in October 1963 began a promotion among candy brokers and commenced large scale nationwide marketing. The plaintiff filed suit against defendants in June 1964. The court held that the plaintiff had a valid common law trademark on its candy that was adopted and used prior to the defendants' use of the same mark and that the defendants had infringed that mark. The Eighth Circuit stated:

It is generally said that exclusive right to use a mark belongs to the first who appropriates it and uses it in connection with a particular business. In resolving the issue of infringement, that is, in determining if the prior user of a mark is entitled to protection against a subsequent user, the test universally applied is whether there is a likelihood of confusion among the consumers.

380 F.2d at 926–27. The court further reiterated the exception to the "blanket application of the 'prior use' rule," *id.* at 928, quoting from *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916):

'In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote from one another, the question of prior appropriation is legally insignificant, unless at least it appear that the second adopter has selected the mark with some design inimical to the interests of the first user....'

Accepting the trial court's finding that the defendants had adopted the mark in good faith, the court went on to state its opinion

that plaintiff is not entitled to protection in market areas independently developed by defendants. However, defendants' right to use the same mark in territory remote from territory developed by plaintiff does not allow defendants to invade the territory already occupied by plaintiff's product. Plaintiff's prior use of its trademark within a given market area entitles it to exclusive use of that mark within that area.

380 F.2d at 928.

The court remanded the case to the district court for a determination of what was the plaintiff's market area, saying:

[T]he record clearly establishes that Washington, Oregon, and California are market areas in which, as a matter of law, plaintiff is entitled to trademark protection on its product. Likewise, we believe the record is equally clear that in many states business transactions have been nonexistent or so small, sporadic, and inconsequential that present or anticipated market penetration is *di mimimus.* Consequently, plaintiff as a matter of law, is not entitled to protection in these areas against defendants' good faith adoption of the same mark. However, there remain a number of states in which plaintiff does or has done some measurable business. To what extent these areas are within plaintiff's effective market area, we believe presents a genuine factual issue....

In determining this issue the trial court should weigh all the factors including plaintiff's dollar value of sales at the time defendants entered the market, number of customers compared to population of the state, relative and potential growth of sales, and length of time since significant sales. Though the market penetration need not be large to entitle plaintiff to protection, it must be significant enough to pose the real likelihood of confusion among the consumers in that area between the products of plaintiff and the products of defendants.

*Id.* at 929.

CAAAI argues that Healthcom's § 1125(a) unfair competition claim and its common law trademark infringement claim must fail because Healthcom cannot show

that it "used" the CARELINK mark in Arkansas prior to CAAAI's first use of the mark. Pursuant to 15 U.S.C. § 1127, "a mark shall be deemed to be in use in commerce ... on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce ..." CAAAI asserts that "use in commerce" under 1125(c) requires the actual rendition of services and all Healthcom has done, with one trivial exception, is engage in promotional activities. *See Wrist–Rocket Mfg. Co. v. Saunders Archery Co.*, 578 F.2d 727, 732 (8th Cir.1978) (common-law trademark rights cannot be established by advertising alone); *Flavor Corp. of America v. Kemin Indus., Inc.*, 493 F.2d 275 (8th Cir.1974) (advertising alone not sufficient to satisfy significant market penetration test).

In addition, CAAAI argues that Healthcom has not penetrated either the State of Arkansas or the Central Arkansas market area. CAAAI asserts that the factors set forth in *Sweetarts* for determining protection in a market area should all be measured as of the time CAAAI entered the market with the CARELINK mark. CAAAI notes that Healthcom's sales at that time were $340.00 or at most $380.00; it had no customers; it had negative sales growth (from one customer to none); and it had no significant sales until well after CAAAI had adopted and established its mark.

For its part, Healthcom argues that because it is undisputed that it first used the mark in interstate commerce at least as early as 1992, it is entitled to judgment as a matter of law on its federal unfair competition claim. It asserts that the *Sweetarts* cases do not apply to claims brought under § 1125(a) because those cases addressed a common law trademark case brought under the court's diversity jurisdiction. In addressing its claim of common law trademark infringement and the *Sweetarts* factors concerning market penetration, Healthcom argues that while its actual sales revenues at the time of CAAAI's first use were only about $400.00, it had incurred substantial expenses in marketing and promoting its services in Arkansas. In addition, it argues the market for Healthcom has been increasing in Arkansas as it has made significant market penetration, there is significant potential for market growth, and since 1995, its sales have grown annually.

Healthcom takes issue with CAAAI's argument that the four factors in the *Sweetarts* market penetration test are to be applied as of the date CAAAI first used the CARELINK mark. Healthcom argues that the strength of the factors is to be determined based upon information available at the time of trial. Healthcom contends, therefore, that its contracts with a number of healthcare providers in Arkansas, which were negotiated after CAAAI began using the mark, show significant sales and great potential for market growth and thus entitle it to protection.

■ The Court has considered the arguments of the parties and finds that because Healthcom does not have a federally-registered mark, its rights are determined according to the common law. *Laurel Capital Group, Inc. v. BT Financial Corp.*, 45 F.Supp.2d 469 (W.D.Pa.1999). Thus, the Court finds it appropriate to look to the *Sweetarts* cases for guidance. In addition, the Court finds that it is appropriate and logical to determine Healthcom's market penetration, which is part of the element of consumer confusion, as of the date the junior user, CAAAI, entered the market.

In *Smith v. Ames Dept. Stores, Inc.*, 988 F.Supp. 827, (D.N.J.1997), the plaintiff was the senior user and the mark in question was not federally registered. The plaintiff relied on § 1125 and common law unfair competition. The court granted the defendant summary judgment, finding the plaintiff had not shown sufficient evidence of market penetration and thus was unable to establish his common law rights, which was necessary to obtain relief under § 1125. The *Smith* court relied on *Sweetarts*, stating:

In *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3rd

Cir.1985), the Third Circuit observed that 'the trademark of a prior user should be protected from infringement by a subsequent user of the same mark only in areas where the prior user has established a market for its goods.' Lack of market penetration preclude a common law right to use the trademark in question because exclusive right to a trademark rests upon appropriation and use, not on federal registration. Under the principles laid down in *Natural Footwear*, 'the senior user of a common law mark may not be able to obtain relief against a junior user in an area where it has established no trade, and hence no reputation and no good will.' 760 F.2d at 1394. The court observed that 'a party should be awarded ownership of a mark in a specific geographic area only when the party's mark has achieved market penetration that is significant enough to pose the real likelihood of confusion among the consumers in that area.' *Id.* at 1397 (citing *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 929 (8th Cir.1967)). To be awarded such rights, that party 'must make a showing of clear entitle[ment]' to protection of its mark in a particular market.

988 F.Supp. 827, 837 (citations omitted). In both *Natural Footwear* and *Smith,* the courts stated that market penetration is evaluated as of the time the junior user adopted and began using the trademark. *See Natural Footwear,* 760 F.2d 1383, 1397 (3rd Cir.1985) (lower court correct in evaluating extent of market penetration as of the period in which the junior user initially registered its mark); *Smith, supra,* at 838.

■ The Court finds that Healthcom is not entitled to summary judgment on its claims against CAAAI. There is no credible evidence that Healthcom had penetrated either Central Arkansas or Arkansas at the time CAAAI started using the CARELINK mark. Thus, the Court finds that Healthcom does not possess superior rights to the CARELINK mark in Arkansas.

**B.**

■ In its counterclaim, CAAAI asserts claims against Healthcom of unfair competition under the federal and common law and trademark infringement under Arkansas law. It seeks a judgment declaring that the use of the CARELINK mark by Healthcom prior to and subsequent to the use and registration of the mark by CAAAI is *de minimus,* that Healthcom has no protectable interest in the CARELINK mark in Arkansas, and that the use of the mark by CAAAI in Arkansas is and has been substantial and is entitled to protection.

Defendant CAAAI argues it is the senior user of the CARELINK mark in the Central Arkansas area, and while it does not provide services outside the Central Arkansas area, its name and mark are publicized incidentally beyond that area and, in some instances, statewide. CAAAI contends that even though it does not "use" its mark outside Central Arkansas within the meaning of 15 U.S.C. § 1127, its name and mark should be protected outside Central Arkansas as well. In addition, CAAAI asserts that Healthcom's use of the CARELINK mark in Arkansas is a violation of CAAAI's state registration and should be enjoined.

Viewing CAAAI as the senior user of the mark in Central Arkansas, the Court finds that the evidence is overwhelming that the market area of Central Arkansas has been developed by CAAAI and its prior use of the CARELINK mark in Central Arkansas entitles it to exclusive use within that area. As to the entire State, the Court already has found that Healthcom had not penetrated that market at the time CAAAI started using the mark. Even though CAAAI admits that it does not "use" the mark outside Central Arkansas within the meaning of 15 U.S.C. § 1127, the Court finds that CAAAI is entitled to protection as to the rest of Arkansas as well.

In ruling against Healthcom on its motion for summary judgment, the Court

found that any use of the mark in Arkansas prior to CAAAI's use was *de minimus*. Since beginning its use of the mark in March 1995, CAAAI's use has been substantial. While CAAAI does not provide its services to the elderly outside the Central Arkansas area, the parties agree that confusion is likely if both use the mark in the same area. Because CAAAI and its CARELINK mark are publicized incidentally beyond the Central Arkansas area, the Court finds that the mark must be protected statewide in order to prevent confusion among consumers and to prevent Healthcom from passing off its services as those of CAAAI.

In addition, the Court finds that CAAAI's state registration of the mark entitles it to protection statewide. Arkansas trademark statutes do not abrogate common law rights. *See* Ark.Code Ann. § 4–71–102. The Court, however, finds that enforcing CAAAI's rights under its state registration would in no way adversely affect rights acquired in good faith by Healthcom prior to CAAAI's registration. *See* Ark.Code Ann. § 4–71–216 ("Nothing herein shall adversely affect the rights or enforcement of rights in marks acquired in good faith at any time at common law.")

When CAAAI obtained its registration on March 23, 1995, Healthcom had made one *de minimus* use of its mark in Arkansas and was not present in the Arkansas marketplace, either through the provision of services or advertisement to the public who might subscribe to its services. While Healthcom argues that under the statutory definition in Ark.Code Ann. § 4–71–101(b)(2), it "used" the CARELINK mark with its first sale of services, which was prior to the adoption of the mark by CAAAI and that the *de minimus* argument thus does not apply, the Court has found that Healthcom's one *de minimus* and short-lived prior use was not sufficient to establish trademark rights. *See Coca–Cola v. Stevenson*, 276 F. 1010 (S.D.Ill. 1920) (state statutes providing for registration are in affirmance of common law).

There is no evidence before the Court that CAAAI did not meet all the registration requirements of Ark.Code Ann. § 4–71–105. Arkansas law extends the rights of a registrant to the entire state. In *Worthen Nat. Bank v. McCuen*, 317 Ark. 195, 876 S.W.2d 567, 569 (1994), the Arkansas Supreme Court stated: "We are not persuaded ... that we should disregard the requirement for registration under the Arkansas Act that the applicant be able to state that the proposed mark is one which is not in use in Arkansas. The intent of the drafters ... was that a registered mark be one to which the owner has exclusive rights in this State."

The Court finds that at the time CAAAI adopted its mark, it was not in use in Arkansas by anyone else. "Use" of a service mark under the Arkansas Trademark Act requires use or display in the sale or advertising of services and rendition of the services in Arkansas. Ark.Code Ann. §§ 4–71–101(b)(2); 4–71–201(11)(B)(ii). The Court has found that Healthcom was not "using" its mark in Arkansas at the time of CAAAI's registration.

Defendant CAAAI's good faith adoption of its mark, CAAAI's registration of its mark in accordance with the Arkansas Trademark Act, and Healthcom's non-use of the mark at the time of registration are undisputed. The Arkansas Supreme Court has held that a state registration extends statewide. *Worthen Nat. Bank*, *supra*. The Court further finds that Healthcom has used a confusingly similar mark in violation of Ark.Code Ann. §§ 4–71–112, 4–71–212. Therefore, the Court finds that CAAAI's registration entitles it to a statewide injunction prohibiting Healthcom's use of the mark CARELINK in Arkansas.

## IV.

IT IS THEREFORE ORDERED that the motion of the National Association for Healthcare Communications, Inc. for summary judgment [doc. # 29] is denied. IT IS FURTHER ORDERED that the mo-

tion of Central Arkansas Area Agency on Aging, Inc. for summary judgment [doc. # 21] is granted. Judgment will be entered accordingly.